Dorsey, Chief Judge.
The said cause being ready for hearing, and having been fully argued by complainants and defendants, the bill, answers, exhibits, testimony, and all other proceedings, were by the court read and considered ; and it being fully established to the satisfaction of the court, that the deeds of the sixteenth January, 1811, from the defendant Rogers to the defendant Strike, mentioned in the said proceedings, were executed for the purpose of defrauding the creditors of Rogers, and without bona fide consideration, — Decreed, that the said deeds be, and they are hereby declared null and void, as against the complainants in this cause. — Decreed also, that the property in said deeds contained be sold. That Henry W. Rogers and Samuel Moale be, and they are hereby appointed trustees for the purpose of making said sale, &c. And the trustees shall bring into this court, the money, or securities for money, arising from said sale or sales, to be applied under the court’s direction, after deducting the costs of this suit, and such commission to the trustees as the court shall think proper to allow, in consideration of the skill, attention and fidelity, wherewith they shall appear to have discharged their trust. All equities as to the distribution of the proceeds of sale, are reserved by the court for hear *63 ing, on the trustees’ report, on bringing into court the money or securities arising on the sale.
Under this decree the trustees reported, that they had, on the 14th of September 1822, made a sale of the two lots, amounting to three thousand nine hundred and fifty dollars, which sale was finally ratified on the 10th of February 1823.
31st May, 1823. — Ward, Associate Judge. — Ordered, that this case be referred to the auditor of. this court to be audited.
The solicitors of the plaintiffs, by their petition, stated, that the plaintiffs had agreed to, allow them, as a compensation for their services, a commission of twenty per cent, on the sum recovered, deducting therefroip fifty dollars from each which had been, paid to them; that they had so far conducted the cause successfully and with great care and labor; that the court had ordered notice to be given to the other creditors of Rogers to exhibit their claims here for settlement; and as the introduction of such other claims into this case might lead to some difficulty, they prayed the court to sanction the allowance of their claims, and to direct the auditor accordingly.
9th January 1824. — Archer, Chief Judge. — Ordered, that the auditor, in stating the account with the trustees, allow to Henry W. Rogers and Henry M. Murray, solicitors for complainants, the sum of $690 as complete fees for conduct of the case, subject to the usual exceptions.
It is 'stated, in the petition of the plaintiffs solicitors, that the court had ordered notice to be given to the creditors of Rogers to exhibit their claims; but there is no such order to be found among the papers. Yet it must be presumed, that such an order was passed and notice given, since it appears, that several of the creditors of Rogers did actually bring in the vouchers of their claims. And it appears, that the proceedings and schedule on the application of Rogers, for the benefit of the insolvent law, had also been filed. From all which, and the proofs in the case, the auditor, on-the 6th April 1824, made and reported a distribution of the proceeds of sale afiiong thirteen of the creditors of Rogers, in which report the auditor says, that he had not noticed Strike’s claims; because the whole of them appear to have proceeded from, and to have grown out of the first fraud between Strike and Rogers, and are not therefore entitled either to a preference or dividend.
*64 The plaintiffs excepted to this report, 1st. Because there is no evidence sufficient in law to support the various claims stated in said account,, except the complainants’ claim, filed or exhibited in the cause. 2d. Because the said claims, or the greater part of them, have been paid and satisfied — your exceptants particularly charge that the following claims, reported by the auditor, have been fully satisfied, viz: &c. and others which the exceptants will be prepared to prove as this court piay direct. 3d. Because the whole of said claims are barred by the act of limitations, which your exceptants plead and rely on in bar of said claims. 4th. Because from the laches and neglect of the several parties, named in said account and report as creditors, to prosecute their several claims, they are not entitled to the aid of this court, or to come in for a proportion of said funds; and have not applied to be let in for such distribution. 5th. Because said report and account are not in conformity with the evidence in the cause, or warranted by the principles of equity, and are in other respects erroneous.
The defendant, Strike, excepted to the report of the auditor. 1st. Because the auditor hath not stated the claim of the said Strike which is filed in the said cause, and the evidence which shows the veracity of the said claim sufficiently proved therein. 2d. Because the auditor in his report hath mistaken both the law and the fact relating to the said claim of the defendant Nicholas Strike.
31st January, 1825. — Ward, Associate Judge. — In this cause, upon motion of the complainants’ solicitor, it is ordered and decreed, that it be referred to the auditor of this court, to state an account of the sums appearing due in this cause from the defendants, or either of them, to the plaintiffs; and also to take an account from the proofs in the cause, or such other proofs as may be required by him of the rents and profits of the several premises contained in the deeds of 16th January 1811, from the defendant Rogers to the defendant Strike ; and also of the taxes and necessary repairs paid on the same by him; and also such further account as he may be directed to take by the said plaintiffs or defendants, and submit the same by report to this court, reserving further consideration, &c.
On the 17th May 1825, the auditor reported, that since his former report, the complainants had filed additional claims against Rogers, which were therewith stated. And the auditor further reports, that since the 13th February 1824, when he stated an account, between the estate of John Rogers and Henry W. Rogers and *65 Samuel Moale, trustees of the said John Rogers, and made a statement of the claims against said John Rogers, (which said account and statement are hied in this court,) the complainants in this case have filed additional claims against said Rogers, which are herewith stated. And the auditor further reports, that the claims of Hollingsworth fy Worthington and Irvine 4r Beatty, contained in the aforegoing statement, have been withdrawn; and that, except the schedule of John Rogers, there is no' proof to establish any of the claims contained therein, but the claims of the bomplainants and of Robert Taylor. That the claim of the said Taylor is for a judgment rendered against Robert Henderson, the former partner of Rogers, at October term 1812, of Baltimore County Court, on a joint action with Rogers, which said judgment was revived against Henderson at March term 1821. The auditor further reports, that he has herewith made a statement of the rents received by Strike, and the sums expended in repairs done on the property in this cause mentioned, and in payment of taxes and ground-rents thereon, so far as he could collect the same from the papers in the cause." And further, that although he gave notice to the counsel of the complainants and defendants, to produce any further testimony which they might have, no additional testimony has been produced.
The plaintiffs excepted to this report, 1st. For, that the auditor hath stated the claims of Strike, one of the defendants, for materials, work, and repairs, made upon the dwellinghouse inhabited by him, which were done for his accommodation, and not to benefit the property.
2d. For that the said expenses and repairs, were incurred by Strike under deeds, which have been decreed by'this court to have been obtained by Strike from Rogers,, in fraud of the bona fide creditors of the firm- of Henderson fy Rogers, of which Rogers was a partner, and without consideration.
3d. For that the said auditor hath not charged Strike with the difference between the prices- bid by Strike at a public sale of the said property by the trustees, and the subsequent sale of the same, he having refused to comply with his purchases.
4th. That the said auditor hath reported the claims of Strike for repairs done to said property, although Strike has refused to produce the bills of the persons who did the repairs, and has relied upon the conjectures of said persons as to their probable value after a long lapse of time.
5th. These complainants further except to the claim hitherto audited in the first report in favor of the Mechanics Bank of Battl *66 more, because, the same is barred by the statute of limitations, the said claimants having laid by, without making any demand, until these complainants, believing themselves the sole creditors, had by their own exertions, and at their sole and great expense, succeeded in setting aside the deeds in this cause mentioned, when they have first presented their demand.
6th. For that the said report and statement is erroneous and defective in point of law and fact; wherefore the said complainants beg leave to except to the same, and pray that the report and statement may not be confirmed by this court, but that the same may be remanded to the said auditor, or set aside and annulled.
The defendant, Strike, excepted to this report, — 1st. For that the auditor hath not stated the entire claim of the said defendant Strike, and that said claim is not correctly stated from the evidence in the said cause.
2d. For that Strike claims the whole proceeds of the said sales of the said property mentioned in the said report, statement, and proceedings, in preference to all the other claimants in the said cause, and will contend that he is so entitled.
3d. For that the said report and statement is erroneous and defective in point of law and fact; wherefore, the said defendant, Strike, begs leave to except to the same, and that the said report and statement may not be confirmed by this court; but that the same may be remanded hy the said auditor, or set-aside and annulled.
After which the plaintiffs, by their petition, founded on the provisions of the act of 1824, ch. 196, prayed, that the case might be removed to the High Court of Chancery, upon which it was so ordered; and all the original proceedings were accordingly transmitted and filed here on the 15th day of June, 1825.
The case having been here brought, to a hearing upon the exceptions to the several reports of the auditor, and for further directions; it was much and strongly insisted, on the part of the defendant, Strike, that under the concluding reservation of this decree, which was altogether a new and peculiar one, every matter was now open for discussion and adjudication, but the simple circumstance of the sale of the property; that this decree was entirely in” the usual form, except the conclusion, which declares, that “all equities as to the distribution of. the proceeds of sale are reserved by the court for hearing on .the trustee’s report, on bringing into court the money or securities arising on the sale.” That by the addition of this peculiar clause, to be found in no similar *67 decree, it'must have been the intention of the court to reserve all the rights and equities of the parlies for its consideration and adjustment after the sale had been made.
10th April, 1826.- — -Bland, Chancellor. — This case has' been very elaborately argued, and is now presented to the court for the purpose of being finally closed. It appears to have been warmly contested in every stage. It has been partly decided, but there yet remains much to be judicially considered and determined.
There is no principle, in relation to the administration of justice, which it'is more important to preserve, or more necessary to adhere to, than that there must somewhere be an end to litigation. A ihatter which has been once solemnly decided, ought not, nor cannot be reheard and readjudicated; controversy must have an end, or society could have no peace. Errors of an inferior tribunal may be corrected by a superior; and even the same court, under certain circumstances, will correct its own mistakes by motion, petition, or bill of review. But no court of justice can allow itself to be engaged in the endless task of weaving and unweaving; of progressing to an adjudication, and then going back.to readjudicate. Hence, whatever has been heretofore determined in this cause must now be considered as finally settled, and in every respect unalterable, except by bill of review, appeal, or in the regular course of law. (a) This does not seem to have been directly controverted in the argument ; but the counsel differ widely as to the nature of the decree of May, 1822, and as to how far it extends over the matter of this suit; and some arguments have been urged which, if yielded to, might lead the court unwarily to trench upon the confines of that decree.
The first inquiry, therefore, is, how much of this cáse yet remains to be judicially passed upon. This case was originated on the equity side of Baltimore County Court, and has been removed into this court according to the act of assembly authorizing such removals. It stands here now as it would have stood had it continued there, or as if it had been begun and instituted here, and these proceedings are to be so considered. They have not been affected by any mere circumstance of place or tribunal, but are here as if they had all passed under, and been sanctioned by the judicial authority of the present Chancellor, and will.be treated accordingly.
The complainants came into court as the creditors of Henderson & Rogers, of both and each of them. The plaintiffs complain, *68 that their debt has not been paid; and they are here seeking payment. To enable this tribunal to give them the relief they ask; and which cannot be obtained without the aid of its peculiar powers; they point to certain property which, they allege, was once confessedly, and ought now, in reality, to be within their legal reach, and subject to the payment of their claim. They allege, that this property, which was at one time held by, and in the name of their debtor, Rogers, has been, and is now iniquitously covered up, and withdrawn from their grasp, by certain deeds of conveyance made by their debtor, Rogers, to a certain ^Nicholas Strike; they pray, that this cover, and these impediments, may be removed; that the property may be sold; that the rents and profits of it may be accounted for; and that the proceeds may be applied in satisfaction of their claim. These plaintiffs then call on Rogéis and Strike, as defendants, to meet and repel these allegations, if they can.
Rogers appears, and admits, that he is the debtor of the plaintiffs, and that he conveyed the property in question to Strike; but denies that it was done with any fraudulent design; on the contrary he avers, that those conveyances to Strike were made by him in trust for, and the better to secure the payment of all his just debts. Strike comes in, and boldly takes his stand in direct and total opposition to the plaintiffs. He avers, and undertakes to maintain and prove, that he acquired the property in question for a full and valuable consideration, and that he has a right to claim protection here, as a fair and bona jide purchaser. He plants himself upon the honesty of his title, and claims nothing by his answer, which should not be conceded to a defendant who fully sustains such a defence as he has set forth.
In application to this claim and defence, proofs have been collected, and the case has been submitted to the decision of a competent tribunal, who, in May 1822, declared and decreed, that the conveyances from Rogers to Strike were “ null and void as against the complainants;” that the property in question should be sold; that the proceeds be brought in “ to be applied under the court’s direction,” and concluding with a declaration, that “ all equities, as to the distribution of the proceeds of sale, are reserved by the court for hearing,” on their being brought in.
It is held to be a first principle, by every court-of justice, that no one can ask for its determination without showing a sufficient ground for its decision. Before a plaintiff can call for a determination in his favour, he must furnish the court with a basis whereon *69 to rest its judgment. In this case, the validity and-sufficiency of the plaintiff’s claim, are the very foundations of the decree; without that claim having been proved or admitted, no such decree ought, or could have been rightfully made. It does, therefore, necessarily and conclusively establish the plaintiff’s claim; and consequently, that claim cannot how, in this stage of this cause, be again, in any manner, put in controversy. This is the first point settled by this decree.
The decree then proceeds to remove obstructions, and to grant facilities. The deeds, which are the impediments complained of, are declared to be null and void; or, in other words, as between the plaintiffs and defendants, they are totally annihilated. Whatever validity or operation they may be permitted to have, as between Rogers and Strike, they can have none at all, “ as against the complainants.” In relation to .them, this property is to be dealt with as if those deeds had never existed. This is the second point settled by this decree.
But it would have come to a most lame and impotent conclusion had it stopped here; therefore, after having determined, that the plaintiffs had a claim, which ought to be satisfied; and, that they had a right to have recourse to this property j it goes on to declare, that the property shall be sold, and the proceeds brought in to be paid over as the court should direct. And this is the third point settled by this decree. So far, then, the matters in controversy between these parties have been finally closed; and this decree must be regarded, as all others of a similar nature have been, as a final decree; one in which all the material rights of the parties have been considered and adjudicated upon.
But the decree speaks of further directions, and of equities reserved; and it has omitted to say any thing of certain incidents to those rights which it had finally settled.' As to all these particulars this decree yet remains to be fulfilled and executed. ' When a case, circumstanced like’this, is brought before’the court-, it is spoken of as a case for further directions; and this phrase is used in reference to all cases, where, after the final decree, as in this instance, a further and eventual interposition of the court becomes necessary, to follow out and complete the equity, the substance of which has been established by the final decree. These further directions are spoken of in this decree, and in all similar decrees of this court, and of the English Court of Chancery; but in giving them, the court must act consistently with itself; and in *70 this instance, where the decree speaks of “ the court’s directions,” and of ail equities being reserved, its phraseology must be made compatible in all its parts. The reservation of all equities must not be used to fritter away, and to abnegate the substance of any matter, which had been, in a previous part of the decree, carefully and solemnly decided. No directions, therefore, wiE or can now be given, which are incompatible with the points settled by the decree. It is now brought before the court to be executed and completed, not in any manner to be revised or impaired. (b)
The decree of May, 1822, is founded upon the existence of a debt due to the plaintiffs; but it does not specify the exact amount, nor does it say any thing of the interest thereon. Interest, in equity, is held to be something more than a mere incident; it is the production, the fruit of the money due. In this case these creditors may now caE for directions as to these particulars. An exact estimate of their claim could not, with propriety, have been made until after the sale of the property decreed to be liable for its payment; because, according to the course of the court in such cases as this, where the proceeds are insufficient to pay all, the interest is to be calculated only up to the day of sale. This, then, is the first point left open by this decree; but it is a matter which may be reduced to a certainty by the calculation of the auditor, to be made according to established principles, from the proofs in the cause ; any further special directions in this instance, therefore, are deemed wholly unnecessary.
In this case, the bEl expressly prays, that the defendants may be ordered to account for the rents and profits of the property in question. The decree has determined, that it was unlawfully detained, by declaring the deeds, under which it was held, null and void. It foEows, therefore, as a consequence of this decision, that an account of the rents and profits should now be ordered, and that directions should be given, as to the time for which the account is to be taken, and as to the manner of taking it. This is the second point left open by this decree; and, as to which the Chancellor will now give directions.
The decree totally annuls the deeds under which Strike claims, without retaining them as a security for any thing. He can now, therefore, claim nothing whatever under them as against the complainants. But if, under all the circumstances of this case, apart *71 from those deeds, and compatibly with the matters decided by the decree, he can show any equitable claim to an allowance for improvements he put upon the property fin question, while it remained in his possession or under his control, the court may now give directions concerning such an allowance. This is the third point left open by the decree, and upon which the Chancellor will now decide.
This is one of those cases, in which one creditor is allowed to file a bill for the purpose of subjecting the property of his debtor to the- payment of his owm claim; and of all others, who may obtain permission to come in and participate in the burthens and the benefits. The other creditors are allowed to come in at any time, either before or after the decree; and it is most usual and proper, that the decree itself should command the trustee to give notice, at the time of advertising the property for sale, to all creditors to bring in their claims-with the vouchers. This is the fourth point which Has been left open in this, as in all other decrees of the kind. The further directions 'as to claims' which may be thus brought in, comprehends every thing concerning them. As to all matters of this nature, so far as may b,e deemed necessary in this case, the Chancellor will.now give directions.
It is said to be an established rule of the Roman law, and that of almost all modern nations, that the true proprietor shall not' recover from the bona fide possessor, any rents and profits which have been consumed by him. But whatever fruits and profits, whether natural or industrial, such as trees standing or felled; grain growing, and the like, which remain- upon the land at the time the trae proprietor established his right, belong to him, and may be recovered from such possessor, as well as the land itself. Yet, as it would seem, if it can be ascertained, that the bona fide possessor was not merely maintained by the rents and profits; but was actually enriched by them, as by applying them to the payment of his debts, he will be held accountable to that amount to the righful proprietor. But this general exemption is not granted to him, who, knowingly, keeps possession of another’s éstate, and therefore he is. compellable to account for all the mesne profits he has derived from the land prior to its being recovered from him.(c)
According to the common law of England, the real owner' may recover the rents and profits from the tenant, whether they remain *72 upon the land or have been consumed by him or not, nor does the occupying tenant’s knowing any thing of his adversary’s title make any difference, as to the nature and extent of his liability for rents and profits. At common law, no damages were recovered in any real action; because, as it was said, until the right to the land was determined, the party could not be said to suffer any wrong. But it seems to have been considered as well established law, from a very remote period, that the right to maintain an action of trespass for the recovery of the mesne profits, followed as a clear and necessary consequence of the party’s having established his right to the land itself. And it appears to be somewhat singular, that, during the period when real actions were muchrin use, the legislature should have deemed it necessary to interpose, for the purpose of allowing, by positive provision, the demandant, in many of them, to recover damages, of rents and profits; and yet, that those real actions, so amended and improved, should have been superseded by the action of ejectment, in which, as it now seems to be settled, nothing is recovered but the land, and the party is left, as at common law, to recover the mesne profits in a separate action of trespass. But the right to recover the mesne profits by way of damages in the modern action of ejectment itself, is recognised by an English statute, passed in the year 1664, and the practice of so recovering them, seems to have prevailed for some time in England, and also in this State. (d)
As early as the year 1667, in a case where lands were settled for the payment of debts, the trustees were held' accountable in equity for the rents and profits to the creditors for whom they were received; and in 1685, it was held, by the Court of Chancery, that he who took the mesne profits by wrong, was considered as trustee for, and accountable to him who had the right; and thenceforward the Court of Chancery made all persons account .for the mesne profits they had received, to such persons as had the equitable title. And it is now settled, that where there is a serious difficulty in recovering at law, fraud, concealment, or the like, or where the title is merely equitable, the party may recover the rents and profits in equity.(e) But in chancery, as in the courts of common law, there seems to have been always a strong disposition *73 to keep the adjudication upon the title entirely apart from the direction as to the mesne profits. It is not improper that the final decree, settling the right to the property, should also go on and decree an account for the rents and profits; but it is usual, where the property is sold, as in this case, to leave the account of the rents and profits to be provided for in the subsequent and further directions. (f)
Where the party has no equitable ground of relief, and is under the necessity of proceeding at law, by an action of trespass for the recovery of the mesne profits, the tenant or defendant, by pleading the statute of limitations, may prevent the plaintiff from carrying his claim in all cases, as far back as the commencement of his title, and the wrong he has-suffered. And should he proceed in equity, if there has been a mere adverse possession without fraud or concealment, the account will be taken only from the time of filing the bill, for it was his own fault not to have filed it sooner. But where the bill is brought upon an equitable title, and there-is a trust; and in the case of an infant, or where there has been any fraud; and in cases of dower, an account of the rents and profits will be ordered, and that from the time the title accrued, (g)
In an action of trespass for mesne profits, they are assessed at the discretion of the jury in damages, and therefore governed by no settled rule as to' the aníount. The jury may, if they think the circumstances of fraud and wrong warrant, or require it, give large and vindictive damages, even as much as four times the value of the mesne profits ;(h) or, on the other hand, they may mitigate the damages down almost to nothing; and it does not appear, that their unlimited discretion, in this respect, has ever been materially controlled by granting new trials. The Court of Chancery is more steady in its principles, wfith regard to the amount of the mesne profits. If the occupant is the mere rightful holder of the property as a pledge; for example, as mortgagee who has been let into possession, he is held accountable for no more than he has actually received, what has really come into his hands, and not for the full value, or what he might have made by skilful and proper management. But where the occupant is a wrongful holder, or has obtained possession, and has held it fraudulently, or where, there *74 being several incumbrances, the first mortgagee uses his security for the purpose of shielding the debtor from the junior mortgagees; in such cases, such a fraudulent or wrongfully occupying tenant, or an incumbrancer who makes such an ill-use of his security, will be charged with the full value; that is, with such an amount of rents and profits as a skilful and diligent tenant might have made from the land.(i)
In this case, Strike informs us in his answer, that he obtained possession of the property in question, (the one lot actually, and the other legally, as landlord of Rogers, on whose property he levied a distress for rent in arrear,) under and by virtue of the deeds from Rogers to him, on the date of them, and that he took and received the whole rents and profits. Those deeds have been declared null, and void by the decree of May 1822, as against the complainants, on the ground of fraud. It appears, then, that Strike obtained possession of the property in question, fraudulently ; that he used those deeds against these creditors, and that he wrongfully held the possession, and received the whole of the rents and profits from the date of those- deeds; consequently, according to the principles of equity, by which this court is governed, and I may venture to add, by the law of all civilized nations, in relation to- rents and profits, Strike must be charged with the full value of the property in question, from the date of the deeds, down to the date of' the sale, when he was turned out of possession.
In relation to the improvements, for which Strike claims an allowance, one would suppose, that in the administration of a system of jurisprudence in a civilized society, there could be no flux and reflux of the principles of justice; that however they might be altered or reformed, they could never, for any length of time, drop into disuse and then be called up again, and generally applied. But it would seem there is a fluctuation, perhaps indeed a mere change of fashion as to principles of law, as in every thing else. (j) It does not appear from any thing I can learn, that the doctrine, in relation to an allowance to the occupying tenant for ameliorations, except as to mortgagees in possession, has ever for a great length of time past, and until very recently, been presented to the consideration of a court of justice in .this State as a subject of controversy; and, perhaps, never before so urged and investigated *75 as it has been upon this occasion, (k) The principles of law, in relation to this matter, belong to our code, but until lately, they *76 have been suffered to lie unnoticed among those rarely used regulations, which are seldom examined but by the curious. In a neighbouring State, so far back as the year 1643, it seems to have been deemed expedient to place upon its statute boob, all the rales in relation to compensation for improvement, made upon the land by one man, the title of which was in another. (l) Yet upon a recent occasion, when a judicial decision was called for upon the occupying claimants law of Kentucky, involving matters which in a greater or less degree attracted the attention of the whole Union, it was found that those legislative provisions had disappeared from the revised statute book of that State, and it required some care to ascertain distinctly what was then its law upon the subject.(m)
It seems to be a sound and a very generally admitted principle of justice, that no man shall be allowed to enrich himself from the losses of another; or, as it is expressed in the Roman law, nemo debet locupletari aliena jactura. The moral force of this rule, in all cases to which it applies, and as between parties alike fair and innocent, appears to have been considered as altogether irresistible. In all cases in which the court is called on to apply this rule, it is *77 essential that it should most clearly and distinctly appear, that he who claims an allowance for his losses, in the shape of compensation for improvements, should be entirely and absolutely free from all blame; because equity never interferes in favour of a wrongdoer. In cases where a bona fide possessor of property, one who is ignorant of all the facts and circumstances relating to his adversary’s title, under a confident apprehension and belief, that he was himself the true owner, proceeds to make improvements, and increase the value of the subject so held, it seems to have been almost universally admitted, that an allowance for such increased value should be made, at least to the extent of the rents and profits. According to the Roman law, such a claim for improvements may be extended to their full value, beyond the amount of the rents and profits as against the improved subject itself, (n) And so, too, according to the marine law, an account for meliorations is made, if necessary, even beyond the profits; and for ascertaining the amount, the rule is to consider the quantum of the improved state in which the ship comes into the hands of the original proprietors; for as to that part, it is not a restitution to them, but a new acquisition, (o) But according to the English principles of equity, if the true owner insists on an account of rents and profits, as he may, not according to the value when the purchaser entered, but according to the present value, the court will order an allowance to be made for repairs and improvements.(p)
But where a man has acted fraudulently, and is conscious of a defect in his title, or has bought a title notoriously bad at the time of the purchase, in such a case, as a mala fide possessor, he is permitted by no law to make any claim whatever for improvements; he must take the consequences of his own imprudence. By the Roman law it is declared, that if a man build with his own materials upon the ground of another, the edifice becomes the property of him to whom the ground belongs, because the owner of the materials is understood to have made a voluntary alienation of them, if he knew he was building upon another’s land; and by the common law it is in general true, that where a tenant affixes any thing *78 to the freehold, he does thereby immediately vest it in the freeholder, so entirely, that it would be waste, in the tenant, afterwards to remove- it;(q) and so it’has been held, in the English court of .admiralty, that if a person buys a ship, the title to which is notoriously invalid, it must be at his own peril that he proceeds to lay out money in repairing and improving her, as no allowance for ameliorations will be made in such case.(r)
In the argument of Coulter's case,(s) among other things, it is said, “ in divers cases, one who is in of his own wrong, shall recoupe and retain, &c. He who hath a rent of £10 issuing out of certain lands, disseises the tenant of the land, in an assise brought by the disseisee, the disseisor shall recoupe the rent in the damages ; so that where the mesne profits of the land, in such case, were of the value of £13, the disseisee, shall recover but £3. The disseisor shall recoupe ? alb in damages which he hath expended in amending the houses.” And as an authority in support of the last position, a case is cited as far back as the year 1340. This argument is adduced in a case in which the only question was, whether an executor de son tort could retain. The court in their opinion held that he clearly could not, assigning the most satisfactory reasons; and they then go on to say, that “ as to the case of recouper in damages in the case of rent-service, charge, or seek, it was resolved, that the reason of recouper in such casé is, because otherwise when the disseisee re-enters, the arrearages of the rent-service, charge, or seek, would be revived; and therefore to avoid circuity of action, and circuitus est evitandus et boni judiéis est lites dirimere, ne lis ex lite oriatur, the arrearages during the disseisin shall be recouped in damages; but if the disseisor ought to have common on the land, the value of the common shall not be recouped, for by the regress of the disseisee, he should not have any arrearages or recompense for them.”(t) The court take no notice of the position advanced in the argument, that “ the disseisor shall recoupe all in damages which he hath expended in amending of the houses,” and assign a reason for allowing the recouper in the other instances put, that is utterly incompatible with allowing a disseisor or mala fide possessor, to recoupe what he had expended in mending the houses, and therefore the position cannot be admitted to be sound law, to the full extent for which it was advanced, if at all.
*79 The term recoupe in the common law, signifies the keeping back or stopping something which is due, and is used for “ to defalk, or to discount;” of which Coulter’s case furnishes an illustration. It is from the common law doctrine of recouper that our legislative provisions for “ pleading discount,”(u) and the English statutes of set-off, about half a century later, have been derived. (v) They all rest upon precisely the same principles. The object is to prevent cross actions, or, as the books express it, circuity of action; and to allow the opposing claims of the same parties to be settled in one action, which must otherwise necessarily give rise to two actions; but however reasonable and desirable it may be, thus to put an end to two subjects of litigation in one and the same suit, yet, as it appears from Coulter’s case, no man shall be allowed to obtain this advantage by his own wrong; and therefore it is, that an executor of his own wrong will not be allowed to recoupe and retain.
Every claim, however, must have a fair, legal, or equitable basis, whether presented to the court as the cause of an original action, or by way of recouper, discount or set-off. The claim for rents and profits, and the opposing claim for improvements, each of them rests upon principles of law and equity that are wholly separate and distinct. Whether or not the proprietor shall recover rents and profits must, in each case, depend upon the justice and equity with which he sustains his claim. If he has, for an unreasonable time, slept upon his rights, and there should appear to be any suspicious circumstances about his case, or any discoverable infirmity in it, the court will lessen, or altogether reject the claim. So, on the other hand, he who presents a claim for ameliorations, must, in like manner, show,''that it is sustainable on its own independent, substantial, and fair principles of equity; as it stands exhibited before the court, it must appear in all respects unsullied by wrong or deception ; it must have no taint of fraud about it; — if it has, it cannot be allowed.
Such claims as these for rents and profits, and for ameliorations, may very often present themselves in a court of equity in opposition to each other; and be set up by litigating parties, by way of recouper, discount or set-off, the one against the other. But if, as in the case of an executor de son tort, a man shall not be permitted to take advantage of his own wrong, even so far as to place him *80 self in a situation to recoupe a just and equitable claim, moskcertainly the law would not endure a wrong-doer to oppose a fair claim, in any degree whatever, by one which had originated, and was wholly founded in his own wrong. Hence it is that a mala fide possessor can, in no case, nor under any circumstances, be allowed any thing for improvements, either beyond or even to the amount of the rents and profits. A different rule, as has been justly observed, would place it in the power of the wrongful possessor, to improve the right owner out of his'estate. Yet it is said, that where the sums are large, the peculiar circumstances of the case may influence the court in directing the account to be taken from the filing of the bill only, and not from the time of taking possession, (w)
Now how stands the case under consideration in reference to this claim for improvements ? The bill charges, that Rogers conveyed the property in question to Strike, for the purpose of avoiding the payment of Rogers’ creditors; Strike answers and denies the charge, and avers, that the conveyances to him were absolute, fair, and for a valuable consideration, and that he is the hona fide purchaser and holder of the property. But the court, by the decree of May, 1822, has declared those conveyances to be" null and void, as against the complainants, and directed the property to be sold for their benefit. Hence it clearly appears, that Strike now stands before this court convicted and condemned as a fraudulent and mala fide purchaser and holder of the property. He, one of the very contrivers, and a party to the fraud, claims an allowance for improvements on the property so obtained and held. Such a claim, it is believed, was never sanctioned by a court of justice, in any country or at any time. According to all law, and every principle of equity, this claim for improvements of every description, must be totally and absolutely rejected.
Strike’s claim for repairs and improvements has been thus disposed of, on general principles. But it is alleged he has another and special foundation for his claim for ameliorations and advances, under the concluding sentence of the decree of May, 1822. But, that decree has declared the deeds from Rogers to Strike “ null and void as against the complainants;’’ it has retained them as a security for nothing, and in no respect whatever. The several parts of that decree must; be made to’harmonize one with another. Those deeds which have been so totally annulled, as against the com *81 plainants, cannot, therefore, consistently with that decree, be allowed to stand as mortgages against them, to secure to Strike either the amount of the improvements, or the advances in money he has made to Rogers. Upon that ground Strike cannot stand, because it is completely covered by the decree. This being the decided opinion of the Chancellor, he might deem it unnecessary to notice that class of cases which speak of allowances for improvements and advances made by actual mortgagees, or by those pseudo purchasers of young heirs and others, whose conveyances are allowed by special favour, to stand and be considered as of the nature of mere mortgages. Yet from the manner in which those cases have been pressed forward, some further reasons, showing why they are inapplicable to this case, may be expected.
In this case it must be distinctly and constantly recollected, that Strike now claims reimbursement for his improvements and advances, not of Rogers, but out of the proceeds of the property in question, and against the creditors of Rogers, who are here as the complainants. All those cases of mortgages and pseudo purchases, are governed alike by the same principles of equity. A separate examination of each of them will therefore be entirely unnecessary.
In all, the bill is brought by the grantor against the grantee, or between parties who stand precisely in that relation to each other, to redeem the mortgaged property, or to set aside a conveyance which had been improperly or fraudulently obtained. And on the case being made out by the proofs, the tribunal has uniformly answered to him who asked the relief, “ you must do equity before you shall obtain equity. It is true, you have been imposed upon and defrauded — but it is no less true, that you have been partially and in some degree benefitted; you have received money from your opponent; he has permanently enhanced the value of your estate; refund the money you have received, pay for the increased value of your estate, and it shall be restored to you; the conveyances of which you complain shall be annulled ; until then they shall stand as a security for those improvements and advances,” Such is the language of the Chancellor in those cases' where he acts under the influence of the maxim, that he who asks equity must do equity; and this maxim is sanctioned and illustrated by an almost endless variety of cases to be found in the books.
But the application of this maxim in these cases, and for the most part, depends not only upon the immediate relationship between the parties of grantor and grantee, but also, almost always, *82 upon the vendee’s being brought before the court by the vendor; that is, the contracting parly injured as plaintiff, against the party injuring as defendant. A few examples will sufficiently illustrate this position: The plaintiff came to be relieved against the penalty of a bond; the ground of equity was established by the proofs, and the relief was decreed, but not without the payment of principal and interest, even although it exceeded the penalty of the bond, (x) But where lands were devised for the payment of debts, and there was a bond debt, the interest of which had outran the penalty, yet the creditor, on a bill filed by him, was allowed to recover no more than the penalty. In the first case the creditor was sustained by this maxim of equity; in the second, his case rested barely on his own contract. Again, the plaintiff for ninety pounds lent, fraudulently obtained a bond for eight hundred pounds, on which he obtained a judgment, and the object of the bill was to have certain lands subjected to the plaintiff’s satisfaction in equity. But the court would not give him any relief, not so much as for the principal he had really lent, and dismissed Ms bill. If, however, the defendant in this case, had come in to set aside the judgment for fraud, equity would have obliged him to pay the ninety pounds really lent. This case is also illustrative of another maxim, that he who has committed iniquity shall not have equity. (y)
Now in order to bring these cases, and the principle they illustrate, fully to bear upon the case under consideration, it must appear, that the complainants not only claim under Rogers ; but, that they stand here, in all respects, as he would have stood; and that they ask to have these deeds vacated upon the same grounds, that he could have made a similar prayer. But the case now before the court is of a totally different nature. Rogers himself is here (as a defendant, charged as a particeps fraudis, and relief is prayed by these complainants against him as well as against Strike. The present creditors do certainly claim this property under Rogers ; and it is also true, that they can only take it, subject to all fair, legal and equitable liens with which Rogers may have incumbered it, antecedent and superior to their claims. But, as against Strike, these plaintiffs are to be considered as purchasers of the most favoured and meritorious class, holding by a prior and superior title. The improvements and the advances for the ground rent, the Pratt-street assessment, and the taxes alleged to have been made and *83 paid by Strike, give him no lien upon the property itself against the rightful owner, either Rogers, these creditors, or any one else. But if Rogers had come here to be relieved against the fraud practised on him by Strike, and to have tire property restored to him, the court would have granted him relief only upon condition of his reimbursing Strike for all his improvements and advances, because they enured to the use and benefit of Rogers. But no equitable principle of that sort can be urged against the complainants. They are here as creditors, praying to be relieved against a fraud contrived between Rogers and Strike.
But, admitting all this. It is alleged, that, independently of the vacated deeds and of the decree, Strike has a claim, as a kind of salvor of this property, which ought to be allowed. It is said he has saved it from the hands of the ground landlord, by paying the ground-rent; he has saved it from the grasp of the Pratt-street commissioners, by paying the assessment levied upon it; and he has saved it from the power of the State, by paying the taxes. He maintains, that he has a right to assume the place, and to be substituted for those claimants, and he founds this claim upon the doctrine of substitution. But Strike, as regards these complainants, was an uninvited officious mala fide meddler with property which he knew did not belong to him, and which he was apprised ought to be liable to the claims of Rogers’ creditors. He made these advances to serve himself, not for the benefit of these complainants; and if he had an intention, that these advances should enure to the personalbenefit of any one, it must have been to Rogers; because it was from him he took the estate; and if the conveyances were to be annulled, it was only against him he could seek reimbursement, (z) Strike, therefore, cannot have, against these complainants, any shadow of countervailing equity on -which to rest his claim for these advances, out of the proceeds directed to be brought into court.
Having discussed the liabilities and pretensions of the defendants, let us now consider the interests of the complainants among themselves. This is what is commonly called a creditors’ bill; and where two or more creditors bring such a bill, or others come in afterwards, the adjustment of their rights and interests, in relation to each other, and the objections which the defendants may make against those who have come in, after the institution of the suit, most generally remain to be considered and decided when the *84 court is called on to malee a distribution of the fund. The claim of the plaintiffs has, as we have seen, to a certain extent, been settled and determined by the decree of May 1822 ; and therefore, their claim is not now to be reconsidered and reinvestigated.
It has been objected, that the bill does not, as it ought, allege that the complainants sue as well for the benefit of other creditors, as for themselves. It is often a matter of some perplexity to determine who ought to be made parties, the rule being laid down in general terms, that all who are interested in the decree should be made parties. This decree virtually recognises this as one of those cases in which all the other creditors of the debtor, against whom, or whose estate the suit is brought, may come in either" before or after the decree, or at any time before the assets have been distributed, and claim a proportionable share of them. And supposing the bill had alleged, that the originally suing creditors sued as well for others as for themselves, it is said, that the right of such others to come in could not now have been questioned. In England it seems to be an established rule, in cases of this kind, that the bill should distinctly allege, that the complainant institutes the suit, as well for the benefit of all others who may thereafter come in, as of himself. In this State such a qui tam allegation in bills of this nature is very common, and is certainly very proper and useful in apprising the court, and all concerned, at once, of the object and character of the suit. But this is the first instance here in which such an objection, to a bill of this kind, has ever been made, so far as I have been able to learn. In this case, it sufficiently appears from the whole proceedings, bill, answers, orders and decree, that this is a case in which other creditors may come in; and therefore in this instance, and in this stage of the case, I cannot say, that the bill is erroneous and deficient for the want of such an allegation ; consequently the other creditors'of Rogers may be permitted to come in and participate, notwithstanding there is no such allegation in this bill, (a)
But it is objected, that those other creditors who, it is alleged, have actually come in to partake, have not presented themselves in legal and proper form, that their claims have not been sufficiently authenticated and proved; and, even if tírese objections were removed, that their claims are barred by the statute of limitations. These objections will be severally considered, and also the reply, *85 that such objections can only be made by the defendants, and not, as in this instance, by a creditor or co-plaintiff.
In England it is the established practice, after a decree to account has been obtained in a creditors’ suit, to give notice by advertisement in the Gazette, to all the other creditors, to bring in their claims to be adjusted before the Master ;(a) and the mode of doing so, is by the creditor’s producing the voucher thereof with his affidavit of the amount then remaining due. (b) Ih this State the practice is nearly the same. But in some special cases the creditor has been allowed to bring in his claim by petition, in order that its nature and peculiar merits might be more particularly set forth; or that he might be permitted to assume the position of a co-plaintiff before the decree, só as to authorize him to prosecute the suit, and to have a voice and vote in the appointment of a trustee, (c) And there are instances in which the creditors have been called in before a decree, in order to ascertain the amount necessary to be raised by a sale of the real estate.(d) But with these exceptions *86 the course has been for the creditors to come in by filing the vouchers of their claims, in the Chancery office; and this may be regarded as the present -well established practice of this court. In this form a creditor may come in at any time before a distribution of the proceeds of the sale has been actually made; and before a final audit has been ordered and ratified; but if the auditor had previously made a statement, the cost of the restatement must be borne exclusively by such new applicant. (e)
*87 With regard to the proof of claims, brought in' by other creditors, it has been the practice in cases of deceased persons’ estates, *88 to require no higher proof than such as would induce the Orphans Court to allow the claim according to the testamentary system, in case no objections were made. Because there being no other mode by which the real estate of a deceased debtor can be subjected to the payment of his debts generally, including those due by simple contract, than by bill in chancery, the decree in such cases formerly expressly declared, that the real estate should be sold “ for the payment of the just claims of the creditors of the deceased in a due course of administration,” and the law required, that the real assets should be paid by the heir or devisee in the same order as the personalty was directed to be administered by the executor or administrator ;(f) therefore, this court has felt itself authorized and required to make a distribution of the real assets upon the same grade of proof, and in the same order, as has been prescribed by law for authenticating and paying claims against the personal estate before the Orphans Court, (g) So that the same claim, whether made against the personalty or the realty, or whether presented to one tribunal or another, should, as to the mode of authentication, be governed by the same rule; and I find this practice spoken of as far back as the year 1803, as then well established. (h)
*89 In cases of insolvency, under the acts of Assembly which formerly referred such matters to the Chancellor, it was the practice *90 to consider the insolvent’s schedule, or his voluntary admission,, as sufficient evidence of the debt; or if the insolvent was dead, then *91 such proof as was admitted to sustain claims against deceased persons’ estates. But, if the insolvent denied the debt, or there was any discrepancy between his schedule or admission and the credit- or’s claim, then the creditor was put to full proof, (i) But the statute of limitations was never considered as an objection to the payment of a claim, either in the case of a deceased person’s estate, or in the case of insolvency, unless it was specially relied upon. The case now under consideration is substantially and in truth, a case of insolvency; not, indeed, referred to the Chancellor by any special act of Assembly, but one which has been brought here by these proceedings, and in due course of law; and, therefore, the assets now here will be distributed upon such principles and proof as have been applied and required in similar cases, where no objection to the claim has been made.
But the originally suing creditors have objected, that the claims of the other creditors, who have come in since the institution of the suit, are not sufficiently sustained by proof; they have also objected, that those claims are barred by the statute of limitations; and their reliance on the statute- was made, and sent'with the reference of the case to the auditor. The reply to these objections, in argument, is, that they are' such as can only be made by one or other, or both of the defendants; and not by a creditor or co-plaintiff.
The debtor or his heir, has so manifest an interest in the real estate -which it is proposed, in cases of this sort, to subject to the payment of his debts, that there never seems to have been any difference of opinion as to his right to make such objections. Where an executor or administrator fails to make such objections, *92 or waives them, or there has been a judgment against him; still the heir or devisee may make such objections in defence of the real assets. And where the executor and some of the heirs waive them; yet, any other of the heirs or devisees may alone make them in defence of the whole of the real assets, as was done in the case of Wm. Frazier’s estate in this court, (j) It seems to *93 be conceded on all hands, that these originally suing creditors have an interest in these real assets ; but, yet it is urged, that they cannot make such objections as these against the claims of their fellow creditors. This matter must be ^determined by practice, on principle, and on authority.
The defendants, or the representatives of deceased debtors, are generally, from strong motives of interest, so very active in their opposition to all and each of the creditors, where opposition can avail, that they rarely leave any thing to be said or done by any one else; and hence, it would seem, from the practice of the court, that they were the only persons who had any right to urge such objections. It is obvious, therefore, that the main current of the practice here is not likely to be very fruitful of information on this subject.
There is a class of creditors’ bills common in England, but of rare occurrence here, which will cast light upon this matter. Bills are often brought there by one creditor in behalf of himself, and others, against executors to obtain payment, and to have the assets brought in and administered under the directions of the Court of Chancery, (k) In such cases the executor is not bound to plead the statute of limitations; and if he does not, the creditors will lave a decree, and be paid. But it is the constant course, in the master’s office, to take the objections ¿gainst other creditors, and to exclude from distribution those, who, if legal objections are brought forward, cannot make their claims effectual. So too, in cases of bankruptcy — if the bankrupt waives any objection, it may still be made by the creditors; and the reason of this is, that the creditors have a direct and manifest interest in the funds, and that it should satisfy their whole claims respectively. If each of them was not permitted to make these objections, they would be left at the mercy of those, for a full defence, who, in all cases, where the fund is not more than enough to pay all the debts, have no interest in excluding any one from partaking, to their prejudice, in the distribution, however ill-founded his claim may be. And besides, such proceedings in chancery, are only to be considered as other modes of compelling payment 5 and the Chancellor is understood, in the distribution, to govern himself as to legal debts by the rules of law; and as to equitable debts, by the rules of equity, regarding the claim of each creditor as a suit depending; and hence, if the *94 executor or bankrupt, fails to object or to plead the statute of limitations, it may be made or relied upon by any of the creditors ; and the validity of such objections will sometimes be directed to be tried on an issue at law. (k)
In this State, similar principles have been held, and sanctioned in the case of William Sluby’s estate : — in that case, Chancellor Hanson observes, in speaking of the liability of the real estates of deceased persons to be sold for the payment of their debts, under the act of 1785, ch. 72, that “ no mode is prescribed by the act for establishing the debts. It is left entirely to the Chancellor’s discretion. But, (he observes,) it is a rule to admit claims on such proof as is prescribed for, and is satisfactory to an Orphans Court; and even to admit claims passed against an executor or administrator by an Orphans Court, unless objected to by some person interested, viz. by a creditor of the deceased,, or his executor or administrator; or by the guardian of the infant.” The chancellor then goes on to speak of the manner in which such objections should be tried; and in substance declares, that he would not direct an issue at law for that purpose, but in extraordinary cases.(l)
There can be no difference, in point of equity, between the case of a creditor’s bill against a deceased person’s estate, and a creditor’s bill, as in this instance, against an insolvent’s estate. ' Therefore, upon principle and authority, it is competent for these originally suing creditors to make these objections, and to rely upon the statute of limitations, in opposition to these claims of the other creditors who have come in since the institution of this suit. But in applying the statute of limitations in such cases, it must be with all its saving provisoes ; and also subject to the resuscitating qualifications of such acknowledgments as are deemed sufficient to take a case out of the statute; of which a statement in an insolvent’s schedule may be considered as one, where the claim and schedule agree. And the statute, as in other cases, must be allowed to commence its operation from the time the debt accrued; and to run on until the creditor came in, by filing his petition, or the voucher of his claim.
The plaintiffs, by their bill, found their claim against the defendants, upon contracts made with Henderson & Rogers; and the *95 decree of May, 1822, recognises and affirms their claims of that description; and the proofs derived from competent witnesses, will enable the auditor, in fulfilment of that decree, to refer to the notes and vouchers, to ascertain the amount, and to compute the interest thereon.
But, it would be altogether without precedent to allow a plaintiff to split up his claim into parcels, and to bring separate suits for each, or after he had obtained a decree to add to the amount, and to eke out his claim indefinitely, by introducing other particulars, and causes of action of a different description, not mentioned or alluded to in the pleadings, or sanctioned by the decree, and which were only noticed in the depositions of some of the witnesses ; or to bring in any additional claim by a mere ex parte petition, filed after the healing and decree. If the plaintiffs had other claims than those mentioned in the pleadings, subsisting at the time of filing their bill, which might have been included therein, they should have had their bill so amended as to have embraced them, and thereby enabled the opposite party to gainsay them if he could: — therefore the account of the plaintiffs with John Rogers alone, and also their claim for costs in the suit against Penelope D. Price, must both be rejected.(m)
The claim of the solicitors, Murray and Rogers, which appears ft have been partially sanctioned by the order of the 9th of January, 1824, may be considered as somewhat in the nature of costs ; and it having been placed by the auditor’s report before the party’s other counsel, and all concerned, and no objection having been made, it would seem now to be proper to allow it entire; and it may be so stated by the auditor.
There is no evidence, derivable from any competent source, going to show, that the complainants ever received the money said to be due on the bonds of a Doctor Harsnip, which were said to have been in their hands and others: — any discount or deduction from the claim of the complainants, on that account, must therefore be rejected by the auditor.
According to the established usage and practice of the court, as has been explained, there are but two modes by which other creditors can be permitted to come in and participate, in cases of this sort; they are either by petition, or by filing the vouchers of their *96 claims. But the filing of the schedule of an insolvent debtor, certainly cannot, by any strained or liberal construction of this practice, be considered as the filing of the vouchers of the claims of all, or any of those creditors, whose names and claims are stated thereon; and, laying aside the insolvent’s schedule in this case, as furnishing no evidence of the intention of any creditor therein named, to come in and make a claim for any debt, which he alleged, and was ready .to prove was due him, when such schedule was filed, there are but two other creditors, who have made any show of coming in as other creditors of Rogers; and they are, Robert Taylor, and the firm of Hollingsworth & Worthington. Taylor has filed a mere short copy of a judgment, which he obtained in Baltimore County Court against Henderson, the partner of Rogers ; and Hollingsworth & Worthington merely say, that the only demand they now have against Rogers, is for twenty dollars, lent him several years ago : — but these claims are so utterly destitute of any support, by proof of any sort, that they must be rejected. There are then, in fact, no claims of any other creditors of the defendant Rogers, which the auditor can be allowed to state and report for confirmation.
Upon the principles before explained, Strike must be charged with the rents and profits, or full value of the property in question, from the date of the deeds from Rogers to him, to the day of the sale by the trustee. The amount, or what has been the full value during that time, must be collected and ascertained by the auditor from the proofs in the cause; and, for the reasons already given, Strikes claim for repairs, improvements, and advances, must be totally rejected.
The practice in the Chancery Court of this State, is wholly unlike that in the Chancery Court of England, in relation to exceptions to the depositions of witnesses. Here, the testimony having been taken publicly before the commissioners,(n) there is no formal order or rule for the publication of it, as in England; but when the commission is returned, it is opened by the chancellor or the register, and objections of every land to the testimony, are taken and considered at the hearing of the cause. In this case objections have been made to the reading of the depositions of two of the witnesses, on the ground of their being interested. The proofs are all now to be sent to the auditor, upon which he is to found some of the particulars of the account he is directed to state. But *97 he should not be suffered to make any statements derived from the testimony of incompetent witnesses or illegal evidence. Therefore these objections do not come now too late, and must be decided on for the government of the auditor.
The Chancellor considers it as sufficiently apparent, upon the proceedings, without going into a statement of the case, and his reasons, that John Rogers, the defendant, is an interested witness; and therefore, the whole of his testimony must be rejected.(o) The reading of the deposition of Alexander Irvine, has also been objected to, on the ground of his interest. It does not, however, sufficiently appear, that he was a creditor of Rogers, and interested at the time; and therefore the objection to his testimony must be overruled. A paper purporting to be the answer of Strike to a petition of.the complainants filed in Baltimore County Court against him, has been insisted on as applicable and furnishing evidence pertinent to this -case. But from its phraseology and general tenor, it is evident, that it cannot he a part of the pleadingsih this suit; and without the other proceedings, to which it purports to he an answer, it cannot be evidence in this cause, and must be rejected.
With these explanations, determinations and directions, the case is referred to the auditor to state an account accordingly; and the several exceptions, as well.of the plaintiffs as of the defendants, to the auditor’s statements and reports heretofore made, so far as the same are inconsistent with the determinations,and directions herein before given, are overruled, and so far :as they may agree therewith,- are sustained.
The complainants afterwards filed a petition stating, that they originally employed as their counsel Henry M. Murray and Henry W. Rogers, and agreed with them, in case of the successful termination of this case, by a final decree against Strike in this court, to pay them ten per cent, each, on the amount of the proceeds of the suit, as a compensation for their services, subject to a deduction of whatever moneys should be paid to them in the mean time, on the account of this suit; and that after the interlocutory decree was obtained, Murray and Rogers applied to Baltimore County Court to fix their per centage on the amount then received by the sale under the decree, while this suit was pending there, which *98 was allowed by that court, under the impression, that those gentlemen were to proceed in the case to a final decree; upon whieh condition alone, was the per centage to be allowed. The petitioners further stated, that Henry M. Murray, soon after that order was passed, died, without proceeding further in the ease, after the auditor’s first report therein, and the petitioners have, in place of Murray, been compelled to engage Charles Mitchell as their counsel, who has attended to the same since; and the petitioners had alone borne all the expenses of the suit. Wherefore they prayed, that the same per centage, in proportion to his services, might be allowed to Charles Mitchell, as was to be allowed to Henry M. Murray, if he had lived, to be ascertained by this court, subject to a like deduction therefrom, of the money advanced by the complainants to him during the progress of this suit, or that this court would be pleased to prevent any further burthen of the counsel-fees in this case upon the petitioners, but that the fund may contribute thereto, under the agreement aforesaid.
17th April, 1826. — -Bland, Chancellor. — The Chancellor has read and considered the foregoing petition. No objection was intimated to him, against the claim of Henry M. Murray, until after the argument, and the Chancellor was engaged in deliberating upon and maturing those directions, with which this case has been lately sent to the auditor. The Chancellor knows of no practice of this-court, or of any analogous proceeding of the English court, which; would authorize the introduction of claims of this sort into a cause,, depending or about to be finally disposed of. The claim of the solicitors, Rogers and Murray, he sanctioned under all the veiy peculiar circumstances which belonged to it, and he considers the-objections to it, stated in the foregoing petition, as coming now too late. The claim has been acquiesced in, and could not now be reconsidered without giving H. M. Murray’s representatives an opportunity of being heard, which cannot now be done. The Chancellor must in all cases leave the contracts between solicitors and suitors, relative to professional services, to be settled and' decided upon in like manner as all other contracts. They cannot, and ought not, to be introduced into, and blended with any pending suit. Therefore this petition must be, and is-hereby dismissed with costs.
On the 4th of May, 1826, the auditor reported, -that in obedience to the order of the 10th of April last, he had re-stated the *99 account between the estate of John Rogers and the trustees, applying therein the proceeds of sale, to the payment of the trustees’ commission and expenses; the complainants’ costs in Baltimore County Court; the costs of this audit, and the fees allowed to H. W. Rogers and H. M. Murray ; and the balance of the said proceeds, then remaining, to the payment of part of the complainants’ claim allowed. By this account, the complainants’ claim, exclusive of the allowance to their solicitors, amounts to - - $8657 81 Proceeds of sale applicable to the payment thereof - 2750 80 Leaving a balance due the complainants of - - - $5907 01 as of the day of the trustees’ sale. He has also stated an account between Strike and the estate of John Rogers, in which he has charged Strike with the full .value of the rents and profits of the property conveyed to him by Rogers, rejecting entirely Strike’s claim for advances in payment of taxes, ground-rents, &c. and has also charged him with interest thereon up to the day of the trustees’ sale. This account ifiakes Strike indebted in the sum of $6559 33, with further interest on $4967 63 from the day of sale; an amount more than sufficient to discharge the balance of the complainants’ claim unprovided for by the account between the estate of John Rogers and the trustees.
To this report the defendant, Strike, excepted, 1st, for, that the auditor has rejected entirely the claim of the defendant, Strike.
2d. Because Strike claims the whole proceeds of the said sales of the said property, mentioned in the trustees’ report, statement and proceedings, in preference to all the other claims in the said cause; and will contend that he is so entitled.
3d. Because tire auditor has charged the defendant, Strike, with the full value of the rents and profits of the property conveyed to him by Rogers, rejecting entirely Strike’s claim; and because the said rents are charged higher than is warranted in the proof of the cause.
4th. Because the auditor should have allowed the defendant, Strike, his advances in payment of taxes, ground-rent, and the sum assessed for the extension of Pratt-street; which he has not done.
5th. Because the auditor should have allowed the defendant, Strike, for all permanent and necessary improvements, laid out and expended, and created on said lots ; which he has not done.
6th. Because the auditor has charged the defendant, Strike, with interest on the rents and profits of said property to the day of the *100 trustees’ sale, which makes Strike indebted in the sum of $6559 33, with further interest on $4967 63, from the day of salewhich he ought not to have done.
7th. Because Strike is- charged with the ground-rent upon the lot on Pratt-street, running to Whiskey-alley; which he ought not to have been.
8th. Because, in the said account and report, an allowance is made to H. W. Rogers and Henry M. Murray, esqr’s. for fees ; and also an allowance for expenses incurred by creditors at the private meetings, to consult about their private affairs.
9th. Because the said statement of account and report is erroneous in point of fact and law, and contrary to equity and right.
15th May, 1826. — Bland, Chancellor. — This case having been submitted upon the auditor’s report, and the exceptions of Nicholas Strike thereto, without argument, the proceedings were read and considered.
Whereupon, it is ordered, that the said exceptions to the said report, made and filed by the auditor on the 4th instant, are hereby overruled; that the said report and statements of the auditor be, and they are hereby ratified and confirmed, and that the trustees apply the proceeds accordingly, with the interest that has been or may be received. And it is further ordered, that Strike, one of the said defendants, forthwith pay unto the complainants the sum of $5907 01, together with interest thereon from the fourteenth day of September, in the year 1822, until paid. And it is further ordered, that the defendant, Strike, pay unto the complainants, all costs which have not been stated and included in the said report of the auditor, to be taxed by the register.
The defendant, Strike, appealed from the decree of the 28th of May, 1822; from the order of the 10th of April, 1826 ; and from the order of the 15th of May, 1826; and the Court of Appeals at June term 1828, affirmed them all. Strike v. McDonald & Son, 2 H. & G. 258.

 Attorney General v. Bowyer, 3 Ves. 725.

 The Santa Maria, 10 Wheat. 442.

 Kames’ Prin. Eq. b. 3, c. 1; Just. Inst. 1. 2, tit. 1, s. 35.

 2 Bac. Abr. tit. Ejectment, H.; 16 & 17 Car. 2, c. 8; Goodtitle v. Tombs, 3 Wils. 120; Lewis v. Beale, 1 H. & McH. 185; Joan & McCubbin v. Shields, 3 H. &. McH. 7; Gore’s Lessee v. Worthington, 3 H. & McH. 96.

 Norton v. Frecker, 1 Atk. 525.

 1 Bac. Abr. tit. Accompt, B.; 2 Bac. Abr. tit. Damages; Shish. v. Foster, 1 Ves. 88; Dormer v. Fortescue, 3 Atk. 124; Pulteny v. Warren, 6 Ves. 73.

 Dormer v. Fortescue, 3 Atk. 124; Pulteny v. Warren, 6 Ves. 73.

 Goodtitle v. Tombs, 3 Wils. 118.

 Powell, Mortg. 292, n.

 “ The law sometimes sleeps, and judgment awakens it; for, dormit aliquando lex moritur nunquam.” Mary Portington’s case, 10 Co. 42.

 Quynn v. Staines, 3 H. & McH. 128; Ford v. Philpot, 5 H. & J. 312; and Rawlings v. Stewart, ante, 22.
Rawlings v. Carroll. — This bill was filed on the 13th of October, 1730, by Aaron Rawlings, against Charles Carroll, Esq., Dr. Charles Carroll, John Digges, and Francis Hall, executors of James Carroll, deceased. The bill states, that in the year 1716, the plaintiff contracted to purchase of the testator, James Carroll, a tract of land called Forest Farm, for which he’ agreed to pay one hundred pounds sterling, in two equal payments at the time specified; that the late James Carroll gave to the plaintiff a bond, conditioned for the conveyance of the land, on the payment of the purchase money, and the plaintiff gave to him his bond for the payment of the purchase money at the times agreed upon; that afterwards, James Carroll made his will, in which he appointed these defendants his executors, and soon after died, without having conveyed the lands to the plaintiff according to the terms of his contract; although the plaintiff had always been, and then was, ready and willing, thereupon to pay the purchase money; and that the defendants had brought suit on the bond given by the plaintiff for the purchase money, and were about to enforce payment. Whereupon, the bill prayed, that the defendants might be directed to convey the lands to him as stipulated by their testator; and that they might until then be enjoined from proceeding at law The injunction was granted, and issued accordingly.
The two Carrolls filed their answer, in which they admit the contract as stated, and that they had brought suit on the bond for the purchase money. But they aver, that their testator, according to the terms of his contract, had made a conveyance of the land to the plaintiff, as appeared by copies of the deed- and a receipt for it given by the plaintiff, which they then exhibited with their answer; that they were the principal and only acting executors ; that the defendant, Digges, had meddled very little with the estate, and the defendant Hall, had renounced the executorship.
To this answer the plaintiff put in a general replication. A commission was issued, under which testimony was taken and returned; after which the case was set down for final hearing.
May Term, 1736. — This cause coming to be heard before his excellency Samuel Ogle, esguire, chancellor and keeper of the great seal, in presence of the counsel on both sides, the complainant’s bill, and the defendants’ answer, and the whole proceedings thereon were read, and appeared to be as before set forth.
Whereupon, and upon hearing the bill and answer, and the proofs taken in the cause read, and what was offered by counsel on both sides, this court doth think fit, and declare, that the defendants pioeure a conveyance from the heir at law of the testator, agreeable to the conveyance which the complainant received from the testator, and gave his receipt for, or procure an act of assembly to confirm that said deed, or such another, on or before the-day of April; and that, upon the execution of such deed by the heir, or confirmation of such deed by act of assembly, the complainant pay the consideration money, and the interest thereof, from the date of the complainant’s bond, mentioned in the bill of complaint; and in case such deed cannot be had from the heir at law, or that an act of assembly cannot be procured for confirming such a deed as herein before mentioned, that the complainant pay only the interest of the purchase money from the date of his bond, as a recompense for the use of the land ; and, that the judgment at law, and the injunction bond be deemed to be, and stand as security for the principal money and interest in case a *76 title be made to the complainant as already mentioned; and' if no such title shall be made, then the judgment at law, and injunction bond to stand as security for the interest of the money only.
The defendants in this cause having declared in court, that they applied to the last assembly for an act to confirm the deed, mentioned in the former decretal order made in this cause, but could not obtain such act; and that the heir at law is a minor, and will not attain his full age in several years, so that they have no means in their power to procure such a conveyance as is mentioned in the said order; therefore, they pray his excellency the chancellor’s further order therein.
The chancellor having heard council on both sides, and taking the same into his consideration, doth think fit to order, that the injunction be made perpetual in this cause, in case the complainant shall pay the interest for the purchase money from the date of his bond, mentioned in the proceedings, and deliver up the possession of tire land to the defendants, which are to be complied with by the last day of October next, with liberty to the complainant to finish his crop of all kinds on the said land, and remove his said crop and cattle therefrom ; or that tire injunction be dissolved. And further, it is ordered, that a reasonable allowance be made to the complainant, by the defendants, for any improvements which the complainant has made on the said land, and which may be useful and beneficial to any person who may, or shall hereafter have possession thereof. And also, that the complainant pay and satisfy to the defendants for any waste committed by the complainant on the said land, beyond what might have been proper in the use and working thereof, by the complainant, during the time of his possession thereof. — Chanc. Proc. Lib. I. R. No. 2, fol. 750.

 1 Hen. Virg. Stat. 260, 349, 443; 2 Hen. Virg. Stat. 96.

 Green v. Biddle, 8 Wheat. 1, and Appendix, I.

 Dormer v. Fortescue, 3 Atk. 134; Pow. Mort. by Coven. 313, n. o; Kames’ Pri. Eq. b. 1, p. 1, s. 3; b. 3, c. 1; Just. Inst. 1. 2, tit. 1, s. 29, & notes; Sug. V. & P. 525; Savage v. Taylor, Fors. 234; Deane v. Izard, 1 Vern. 159; Shine v. Gough, 1 Ball & B. 444; Hardcastle v. Shafto, 1 Anstr. 185; Attorney General v. Baliol Coll. 9 Mod. 411; Webb v. Rorke, 2 Scho. & Lefr. 676.

 The Perseverance, 2 Rob. 239; The Kierlighett, 3 Rob. 101; Nostra de Conceicas, 5 Rob, 294.

 Sugd. V. & P. 525.

 Am. &. Fer. Law Fix. 14, 241.

 Just. Inst. b. 2, tit. 1, s. 30; Nostra de Conceicas, 5 Rob. 294.

 5 Co. 30.

 Green v. Biddle, 8 Wheat. 81.

 1654, ch. 23; 1699, ch. 39; 1715, ch. 29; 1729, ch. 20, s. 5; 1785, ch. 46, s. 7. Baltimore Insu. Comp. v. M’Fadon, 4 H. & J. 42; Brack. Law Misc. 185.

 2 Geo. 2, c. 22, s. 13; Just. Inst. b. 4, tit. 6, s. 30.

 Sugd. V. & P. 526.

 Fran. Max. 4. note; 2 Ev. Poth. Obl. 89.

 Fran. Max. 8.

 Kames’ Pri. Eq. b. 1, p. 1, s. 3.

 Martin v. Martin, 1 Ves. 214.

 The Case of the Creditors of Sir C. Cox, 3 P. Will.

 2 Harr. Pra. Chan. 36; 2 Fow. Ex. Pra. 252; Hardcastle v. Chettle, 4 Brow. c. c. 163.

 McMechen v. Chase. — This was a suit instituted by a creditor of a deceased debtor against his heirs to have his real estate sold for the payment of his debts. — In which suit Elizabeth Edwards, by petition, setting forth, that her testator was a creditor of the deceased, prayed to be admitted as a co-plaintiff, so as to come in, participate, &c.
1st October, 1316. — Kilty, Chancellor. — The prayer of the above petition is granted.
After which there was a decree for a sale, under which_a sale was made and confirmed ; and sundry other proceedings were had, when the case was brought before the court. .
6th November, 1820. — Kilty, Chancellor. — I consider the practice, as to the act of limitations, to be similar to that of the courts of law. If the defendant, in his answer, contests the claim in any other manner, without pleading, or relying on the apt, he cannot afterwards resort to that defence. Claims filed, on the sale of a real estate, by creditors, not originally parties, are subject to be contested by the heirs; not usually by answer, but by some written notice of their defence. A defence was made in writing to this claim, on the part of the heirs, on the 10th of February, 1318; after which witnesses were produced, on both sides, and proceedings were had before the auditor. The plea, now relied on, was filed on the 10th of December, 1819, and cannot be admitted.

 Corrie v. Clarke. — This was a creditor’s bill filed on 22d April, 1800. It begins thus: “ The bill of complaint of James Corrie, administrator of John Corrie, and in his 'own right, in behalf of himself, his intestate’s estate, and others the creditors of Parrott Clarke, late of Caroline county, deceased, sheweth that the said,” &c. &c.
19th May, 1802. — Hanson, Chancellor. — Ordered, that the creditors of the said Parrott Clarke, by the publication of this order, at least three times before the 16th day of June next, in the Easton newspaper, be notified to bring into this court their *86 respective claims, with the vouchers thereof, on or before the 16th clay of August next, to the intent, that there maybe ascertained, the sum necessary to be raised by a sale of the real estate of the deceased for the payment of his just debts.
After which the case came on for a final hearing.
4th January, 1803. — Hanson, Chancellor. — -The complainants’ claim against the said Parrott Clarke, deceased, being established to the satisfaction of the Chancellor; and it appearing, that the personal estate of the said Parrott Clarke is insufficient for file payment of his debts — decreed, that the lands be sold, &c.
A sale of the real éstate was made, reported, and finally ratified accordingly. A commission had been issued in the usual form, to appoint a guardian to the infant defendants, and such a guardian had been appointed accordingly, who answered for them.
23d August, 1803. — Hanson, Chancellor. — Ordered, that the principal money, arising from the sale of the estate of Parrott Clarke, deceased, be applied agreeably to the auditor’s statement of the 12th instant; and, that whatever interest is paid by the purchaser shall be divided, in due proportion, amongst the persons entitled to the principal. But, inasmuch as tire Chancellor knows not whether the heirs of said Clarke are of years of discretion, or have a guardian to their persons and estate, the balance of £143 2s. Id., must be subject to the Chancellor’s future order.

 Angell v. Haddon, 1 Mad. Rep. 528; 2 Fow. Ex. Pra. 254; Davies v. Stewart, per Johnson, Chancellor, 17th February, 1823.
O’Brian v. Bennet. — This bill was filed by O’Brian and wife on the 18th of June, 1800; by which it appears, that the defendant Pouder, being -seized in fee simple of a lot of ground in Baltimore, sold it to Francis Caskey for £687 10s., and gave Caskey his bond to convey it to him when he paid the whole purchase money; that Caskey paid £337 10s. in part; that afterwards he mortgaged his interest for a certain sum of money to the defendant Patrick Bennet; after which Caskey devised his interest to Martha, one of the plaintiffs; and died. And then the defendant Pouder conveyed all his right to the defendant Bennet — that Bennet holds possession and refuses to convey, or to suffer the plaintiffs to redeem. Prayer for general relief &c.
On the 27th January, 1802, a decree was passed, by consent, for a sale in the common form. The amount due Bennet, was also agreed by writing, dated 8th October, 1801. A sale was made and reported accordingly, which, by an order of the 19th of May, 1802, was at once absolutely ratified, the persons concerned having expressed their approbation thereof — that is, the plaintiffs and defendants.
The property having sold for more than enough to satisfy the claims of the defendants, the plaintiff Charles O’Brian, by his petition, stated, that he having been appointed the executor of Charles Caskey, as set forth in the bill, had obtained letters testamentary; that the personal estate of Caskey was exhausted; that he had been *87 sued, and was likely to be made liable for a large amount of debts; and therefore prayed that the surplus of the proceeds of sales in this case might be paid over to him as executor.
9th June, 1802. — Hanson, Chancellor. — Ordered, that the creditors of Francis Caskey, deceased, be notified by a publication of this order three Tuesdays or Fridays in the Baltimore Telegraph, before the end of the present month, to exhibit their claims, with the vouchers thereof, to the Chancellor, before the first day of September next; in order, that after that day a dividend may be made amongst the said creditors of about £600, arising from the sale of certain property, mortgaged by the said Caskey, over and beyond the mortgage debt and costs, &c.
After which, Bernard Caskey, as creditor of Francis Caskey, deceased, by a petition, prayed' to have his claim discharged out of the surplus remaining after discharging the mortgage.
16th October, 1802. — Hanson, Chancellor.- — Ordered, that the trustee for the said sale, by publishing this order three Tuesdays or three Fridays in the Baltimore Telegraph, before the 15th day of November next, do give notice to the creditors of the said Francis Caskey, deceased, to exhibit their claims, with the vouchers thereof, to the Chancellor, before the first day of February next, to the intent that a fair dividend of the said surplus may he made amongst the just creditors of the said deceased.
This order was published, and, in consequence thereof, several creditors exhibited their claims, an account of all which was stated by the auditor.
13th February, 1803. — Hanson, Chancellor.- — Ordered, that the money arising from the sale of the estate of Francis Caskey, be applied according to the auditor’s statement filed'on the 11th instant; and that the balance of £328 Os. 3d. be paid to Charles O’Brian and wife.
After this, on the 1st of March, 1803, William Richardson, by his petition, stated, that the late Francis Caskey was indebted to him, the vouchers of which he filed, being short copies of judgments obtained by Bernard Caskey, against the plaintiff, Charles O’Brian, as administrator of F. Caskey, a part of which were assigned to the petitioner, and the surplus still remained in the hands of the trustee, who was apprised of this application, and would not pay over the proceeds, until this claim was acted upon. Prayer that the claim be allowed.
1st March, 1803. — Hanson, Chancellor. — In this case, the Chancellor has passed an order for discharging the claims which had been filed and passed, and for the residue of the money arising from the sale to be paid to Charles O’Brian and wife.
It seems, this order has -not been fully complied with, and this day, for the first time, claims are exhibited, with a prayer, that they be discharged by an application of the said residue. The Chancellor being satisfied of the justness of the said claims, cannot do otherwise than direct an application accordingly. And, had the said claims been exhibited in due time, no order would have been passed, as aforesaid, in favour of O’Brian and wife. It is well, that an application is made before the money is paid under that order. But had the money been so paid, no blame could attach to the court or to the register.
The Chancellor regrets, that he feels himself compelled, by a paper which has met his eye, to make certain remarks, which, at first sight, may appear unnecessary, if not improper. There is not the slightest reason for him to believe, that the aforesaid claims were ever before this day received into the office. It is far more probable, *88 that, being either put into the mail, or enclosed in a letter to be delivered by a private hand, they never reached the office, than it is, that the register, having received, carelessly lost or mislaid them.
It is injurious to the Chancellor to allege, that a claim with proper vouchers, filed in this court, cannot be established without the aid of counsel. Any man, attending to the proceedings of this court, might know, that all claims for money, arising from sales under a decree of this court, are either examined in the first instance by the Chancellor, or submitted to, and reported on by the auditor; and that counsel are rarely, if ever, employed to support any claim, except ihose claims which are disputed, and which are not, in the first instance, supported by properproofs or vouchers.
The Chancellor has made these remarks; because he conceives, that it cannot be improper for any man, or body of men, by a plain declaration, to refute a calumny, which, (if unnoticed,) might produce disagreeable, mischeivous consequences.
It is ordered, that of the money arising from the sale, in this cause, heretofore directed to be paid to O’Brian and wife, there be paid to Bernard Caskey, the principal sum of seventy five pounds, with interest thereon, from the 12th day of April last, until payment by the purchaser. And, that there be paid to William Richardson the sum of one hundred and seventy seven pounds, seven shillings, and nine pence, with interest as aforesaid; and that, unless a further claim, or claims, be preferred before the balance be paid to O’Brian and wife, in whose hands, money arising from the sale aforesaid, would have been answerable, &c.

 1785, ch. 80, s. 7.

 1798, ch. 101, sub ch. 9.

 Ringgold v. Jones. — This was a creditors’ suit instituted on the 21st of November, 1799, by William Ringgold, and others, in behalf of themselves and others, the creditors of William Sluby, deceased, against Jones and others, his executor and *89 devisees. The answer of the executor admitted the total insufficiency of the personal assets. The other answers were to the same effect; and on the 2d July, 1801, a decree was passed, ordering a sale of the real estate in the usual form.
It appeal's that Benjamin R. Morgan, another creditor, came in by filing the voucher of his claim, which the auditor, by his report of the 22d June, 1802, declared to bo wholly inadmissible. After which, Morgan filed his petition, praying, that the Chancellor would taire the subject into his consideration, and give such directions to the auditor, as he thought proper.. On the 25th November, 1S02, Morgan, hy petition, prayed for further time to produce satisfactory proof of his claim ; and the Chancellor appointed a day for hearing, &c. On the 12th February, 1803, William Ringgold, and also James Ringgold, two of the originally suing creditors, by petition, objected to the allowance of the claim of Morgan; because it was founded on a partnership transaction, which had been settled, and that the claim had been paid: and on the 30th of April following, one of them, James Ringgold, filed sundry objections to Morgan’s claim, the first of which is thus expressed : “ That the same is for a balance stated to he due on a partnership between the said parties, ending in the year 1774, which ought not to he allowed, on account of the lapse of time, and being unsettled by the parties themselves, is exhibited hy the executor, [B. R. Morgan,] of one partner against the real estate of the other, where the creditors of Sluby have no opportunity, by producing his books, to invalidate the same.”
2d May, 1803. — Hanson, Chancellor. — Benjamin Morgan having exhibited a claim against the said Sluby’s estate, which the auditor of tins court rejected, the Chancellor, on application of one of the said Sluby’s creditors, passed an order, declaring, that on the 24th of April last, he would, on application, decide on the said claim, provided notice, &c. See. Notice has been acknowledged hy Morgan’s solicitor, who appearing, here produces no proof or voucher, to establish the claim heretofore made ; but prays further time, and instructions from the Chancellor; and an order for the producing of hooks, &c.
It is certain, that at the time of passing the last order for deciding, See.., it was the chancellor’s intent, and it was so understood, as it seems, hy the said solicitor, and the creditor, that the aforesaid claim should, at the time appointed, be decided on, and the applicant aforesaid unite in the decision’s taking place.
The act of 1735, ch. 72, has been always understood, as directing the lands of a deceased debtor, who devises, or suffers his real estate to descend to an infant or infants, to he sold under the authority of this court, in aid of the defective personal estate, to pay the debts of the deceased which are established to the Chancellor’s satisfaction. No mode is prescribed by the act for establishing the debts. It is left -entirely to the Chancellor’s discretion; hut he has observed, it is a rule to admit claims on such proof as is prescribed for, and is satisfactory to an Orphans Court, and even to admit claims, passed against an executor or administrator, hy an Orphans Court, unless objected to by some person interested, viz.: by a creditor of the deceased, or his executor or administrator, or hy the guardian of the infants.
When claims are objected to on one part, and persisted in on the other part, the question is, in what manner shall it be tried ? If every disputed claim should be -directed to be tried by a jury, very considerable expense might, in many instances, be incurred; and the fund, for the payment of just debts, would become inadequate, or the infants might be impoverished. The Chancellor has never thought it necessary, or indeed proper, in the case of any disputed claims against a deceased person, to send out an issue, or lo refer the party to an action at law. Indeed it would be difficult, in most cases, to ascertain the proper parties for an issue. The executor-or, *90 administrator surely would not be compelled, without being a party, to act as defendant on the trial of the issue. However, in all cases where a claim depends on a single fact, or facts, strongly litigated, and of difficult investigation, the Chancellor conceives, that in some manner an issue ought to be tried. For instance, a bond is exhibited with an'affidavit of no payment, &c.; payment is alleged; but no receipt is produced; or if a receipt be produced, there is an allegation of forgery. In such a case, an issue may be sent out to be tried between the claimant and the parly alleging; if the said party chooses to be considered as plaintiff on the trial of the issue.
In the present case, the claimant has filed an account with an affirmation of the truth of the account. The person taking the affirmation has not certified the affirm-ant to be a Quaker, Menonist, Tunker, Nicolite, or other person, entitled by law to-have his affirmation to be on a footing with an affidavit by a common person. Of course, the affirmation is to stand for nothing.
The petitioner, Benjamin-Morgan, has supposed the objection to his claim is, that his account is not regularly slated. He is mistaken. The objection is, that he has no proofs or vouchers to- establish any claim against the deceased. He claims, as the representative of a partner with the deceased. He charges the deceased with all goods sent to him, and gives no credit, unless for remittances in money, or other things. The balance he considers as the sum to him due; or if he and the deceased were partners, he considers himself entitled to one half of the balance. His account resembles little a partnership account. A and B are partners. A sends £ 10,000 worth of goods to B, who remits to him £3,000- Can it be supposed, that merely from this, B owes' £2,000 to the partnership; and of course owes £1,000 to B? No! The charges of the store are to be taken into the account.. There may be losses of the articles, or they may have been sold for less than was expected; or they may have been sold for a- great profit. In fact B was only to credit the company with the sale of the articles, and to charge every expense of storekeeping; and if there was a balance in favour of the partnership, that is to say, if, after deducting all expenses the sale of the goods amounted to- not more than £10,000, it is impossible that B-shall be in debt to A.
The claimant, Morgan, has, by his petition,-requested the Chancellor, to instinct the auditor with respect to the mode of stating the account. What can tile Chancellor do more, if he shall direct the auditor, than order him to state the account, as other accounts are stated? The auditor’s objection to the account, was not merely as to-the mode. The auditor was of opinion, that an account charging the goods sent to Sluby, and crediting him only, with what he sent to Morgan, could not possibly be a just statement of a partnership account.
Morgan, by his petition, requests an order for the production of books in general. Perhaps the law, usage, or practice of this court, respecting the production of books, is less understood, in general, than any part of the jurisdiction of this court. The-power of ordering books, has ever, as it ought to be, been exercised with great caution. No instance can be shewn, where a man has been considered as entitled to tile production of private books, in which he has not an interest. And in all cases where books have been ordered to be produced, the particular books have been specified ; and the court has been first satisfied of the necessity of producing them. But, in no instance has a man, who is not a party to a suit, been compelled to produce private boojcs. Is it conceivable, that Morgan, exhibiting a claim against Sluby, in a summary way, -without filing a bill against any person whatever, is entitled to an order against every person whom he alleges to have in his possession certain hooka *91 which may throw light on the subject ? Suppose an order on A B, to produce books, without any specification, and the order not complied with, by producing any books whatever. Is A B instantly liable to attachment? It would be ridiculous to suppose it. The fact is, that no man has a right to the production of another’s books; and eveiy man may do as he pleases with his own books. Each partner, indeed, is entitled to the benefit of all books kept by the partnership. But then the person in Whose possession they are, must, in some way, be made a party to a suit, before they can be ordered to be produced.
It appears to the Chancellor, that the utmost he can grant to Benjamin Morgan, is further time for establishing his claim; and that the Chancellor cannot, jn this case, with propriety, for the reasons herein assigned, direct any issue, or issues to be tried. It is, on the whole, ordered in the presence, or with the assent of Morgan’s solicitor, that he be allowed until the first day of July next, to produce his vouchers, and have his account against Sluby, (if any just account he hath,) stated by the auditor of this court.

 1 Ev. Poth. Obl. 409.

 Edmondson v. Frazier. — This MU was brought by creditors to- subject the real estate-of the deceased debtor to the payment of his debts. The estate was sold accordingly under a decree in the usual form. The auditor, in his repeat of the 29th January, 1822, says, “ the act of limitations, which, as a bar to the creditors’ claims, is relied upon by the distributees only, the auditor is not satisfied they are entitled, under the circumstances, to the benefit of it.” This report was excepted to by the distributees on this and other accounts.
10th April, 1822. — Johnson, Chancellor. — Exceptions to the auditor’s report are filed. The complainants except to that part of the auditor’s report unfavorable to the claim of Nicholas Hammond, which claim is founded on a bond executed by one John Mace, and William Frazier, the above deceased, as security. The auditor, in conformity with the usual course of the court, would not allow the claim without evidence to establish the allegation in the bill, that Mace, the principal debtor, was insolvent. A court of equity when.it inteiposes, and adjusts the relative obligations of contracts and agreements in which more than iwo parties are concerned, calls them all before the court; that a complete and final adjustment may take place, and each he compelled to pay his just portion; and thereby the creditor draws from each, being solvent, what equitably ought finally to be drawn from him. It will not compel the one, both of the debtors being solvent, to pay the whole, and turn him over to his co-security to restore the one half. When, therefore, estates are sold to pay debts, and in which the interests of minors are generally deeply involved, it becomes the duty of the court, to see, that no claim be allowed, in which the deceased, with others-, stands indebted, without satisfactory proof being produced, that the other persons joined in the obligation were insolvent. But as that proof is now produced in support of the claim No. 4, the same is hereby allowed, and the trustee is directed to pay the same, with a due portion of the interest received, or that shall he received.
Exceptions are filed on the behalf of Wm. R. Stewart and wife, of Samuel Wright and Mary Elizabeth Wright, to the claim distinguished by No. 3. This claim, by the answer of those who are only interested in its rejection, under the decree, is strongly contested, and the act of limitations relied on asahai to the recovery. The answer of one defendant, in chancery, can never implicate the interest of a codeíendant; but more especially, when the person, so answering, is not interested in the matter in controversy. The answer, therefore, of Wm. Steward’s (Frazier’s) widow, and executrix, who had exhausted the personal funds, never can be received to charge the real. They can only be affected by the answer of those interested in them, or by tire exhibition of such proofs as will bind them. The claim No. 8, rests on a bond dated 7th February, 1790; and on an open account, about the same time. The bill in this cause was filed on 23d October, 1815, more than twenty-five years after the bond; which was made payable forthwith A sufficient length of time has elapsed to presume payment. Nor is there any evidence in the cause to remove the presumption. The exception taken to the claim No. 3, is therefore supported, and the claim is hereby rejected. The auditor is directed to re-state the account, rejecting the said claim.

 1 Mad. Chan. 578.

 Ex parte Dewdney, 15 Ves. 497; Jolliffe v. Pitt & Whistler, 2 Vein. 694; Gifford v. Hart, 1 Scho. & Lefr. 409; Civil Code Napol. art. 2225.

 Ringgold v. Jones, ante, 88, note; Edmondson v. Frazier, ante, 92, note; Shewen v. Vanderhorst, 1 Russ. & Myl. 347; S. C. 2 Russ. & Myl. 75.

 Spragg v. Birkes, 5 Ves. 589; 5 Bac. Abr. 668; Purefoy v. Purefoy, 1 Vern. 29; Hutson v. Lowry & Neville, 2 Virg. Cases, 42; 1825, ch. 167; Wallis v. Saville, 2 Lutw. 1536.

 1785, ch. 72, s. 14.

 Murray v. Shadwell, 2 Ves. & Bea. 401.